[No. 2215. Decided July 23, 1896.]

## WALTER H. SODERBERG, *Appellant*, v. KING COUNTY, *in the State of Washington, Respondent.*

MORTGAGE FORECLOSURE SALE — SHERIFF'S COMMISSION — WHEN SUR-
PLUS — PAYMENT. BY SHERIFF TO COUNTY — RIGHT OF JUDGMENT
DEBTOR TO RECOVER — ASSUMPSIT.

A sheriff is not entitled to a commission upon the sale of mort-
gaged premises under a decree of foreclosure, where the property
was bid in by the plaintiff for the amount of the mortgage debt,
although the officer and the purchaser may have intended that a
portion of the sum bid should be in payment of a commission de-
manded by the officer.

Where the sheriff upon making a foreclosure sale has been paid
by the bidder, who was the plaintiff in the action, a certain sum as
commission, such sum constitutes a surplus in the hands of the
sheriff, which it is his duty to pay over to the judgment debtor.

Assumpsit will lie against a county for the recovery of sums
charged by the sheriff as commissions upon foreclosure sales and by
him mistakenly paid into the treasury, when such sums constitute
a surplus in his hands to which the judgment debtor is entitled.

Want of privity between the parties is no obstacle to an action
for money had and received.

A payment by the sheriff into the county treasury of a surplus
arising from a foreclosure sale, made without the knowledge or con-
sent of the judgment debtor, cannot be considered as a voluntary
payment by the latter.

Appeal from Superior Court, King County.—Hon.
RICHARD OSBORN, Judge.    Reversed.

*Lindsay, King & Turner*, for appellant.

*A. W. Hastie*, and *W. W. Wilshire*, for respondent.

The opinion of the court was delivered by

GORDON, J.—Appeal from judgment of the superior
court of King county in favor of defendant. This
action was brought by plaintiff, as assignee of divers

persons, judgment debtors in various forecloseure pro-
ceedings, claiming to be entitled to a surplus arising
upon each of such foreclosure sales.   There are thirty-
five separate and independent causes of action, all
based upon similar facts, and governed by a common
rule of law.    The aggregate amount claimed is
$2,004.84.    There was no redemption in any case, and
the plaintiff in each of the foreclosure actions became
the purchaser.   From the record it appears that the
amount claimed as surplus in each case was the sum
claimed by the sheriff as fees and commission in con-
ducting the sale, and that the sheriff thereafter paid
into the treasury of the respondent county the several
amounts, under the mistaken belief that it was his
duty to deduct a commission from the amount bid in
the respective cases, and turn the amount so collected
or deducted into the county treasury, as he is by law
required to in all cases where fees as compensation for
official services are received by him.

Two principal defenses are urged:   First, that the
sums claimed by plaintiff were not surplus, to which
the plaintiff's assignors were entitled, but constituted
a fee or commission which the officer making the sale
claimed the right to charge, and which the purchaser
at the sale knowingly paid to such officer as a commis-
sion charge on said sale; and that "neither the appel-
lant nor his assignors had or has any interest in or
concern with the money or transaction, but the same
is a matter between the purchaser and the sheriff."
The second ground of defense is:

"That the sheriff's payment to the county of this in-
debtedness due from him to either the county or the
appellant's assignors was voluntary, with full knowl-
edge of all the facts, under a claim of the county to
payment in its own right, and not in any wise as the

agent of or pretending to be authorized to receive the
same for or on behalf of appellant's assignors; that
the county claimed said payment as creditor of the
sheriff on account of his liability to the county for all
fees and commissions received by him; that the sheriff
was indebted for the amounts herein claimed as sur-
plus, either to the county as for commissions, or to the
respective judgment debtors as for surplus; and that
his payment of this indebtedness to the county, an
independent claimant, in preference of the respective
judgment debtors, also independent claimants, does not
invest appellant, as assignee of said judgment debtors,
with a right of action against respondent for the
amounts of these payments, upon a money demand,
as for money had and received or otherwise, although
it may be true that of right the sheriff should have
made such payments to appellant's assignor."

It becomes necessary to ascertain whether appel-
lant's assignors were entitled to the respective sums
claimed from the sheriff conducting the sales. Coun-
sel for respondent do not seriously contend that they
were not, and this court held in *State, ex rel. Thompson,
v. Prince,* 9 Wash. 107 (37 Pac. 291), that a sheriff was
not entitled to a commission upon the sale of mort-
gaged premises under a decree of foreclosure where
the property was bid in by the plaintiff for the amount
of the mortgage debt. It matters not that the officer
believed that he was by law entitled to and required
to retain a commission upon such sale, and that this
opinion was concurred in by the bidder, because, in
contemplation of the law, the property is sold for the
highest sum bid, and the law makes the application of
the purchase price. To give effect to what is asserted
to have been the intention of the purchaser, viz.; that
a portion of the sum bid by him was in payment of a
commission which the sheriff conducting the sale de-
manded, and which the bidder supposed he had a

right to demand, would be, in effect, to give such pur-
chaser a preference at the sale, and would be to per-
mit the bidder and the officer to control and apply the
proceeds of the sale.   He bids a lump sum for the
property, not a certain sum for the land, and an addi-
tional sum as and for costs and commission.   The rea-
sons which induced him to make the bid are quite
immaterial, and cannot be inquired into.   He is con-
clusively presumed to know the law.   Were the rule
otherwise, how could it be ascertained that the actual
purchaser was the highest bidder?   The amount
claimed by appellant as a surplus in one of these
causes of action is about $500.   The logic of respond-
ent's position is that the purchase price in that case
was theoretically $500 less than the amount actually
bid.   Who can say that this $500 might not have de-
terred some other bidder, who likewise would be pre-
sumed to know the law, but might well be ignorant of
what was really intended by the rival bidder?   There
is one sufficient answer to this.   That is that the judg-
ment debtor is entitled to an accounting for the sum
actually bid as the purchase price of the property sold,
and that the law directs how the purchase price shall
be applied.   Therefore it is not competent to inquire
the reasons which may have actuated the purchaser in
making his bid.   It cannot be told that he would have
received the property had his bid been less than it
actually was.   Suppose that the judgment debtor had
availed himself of his statutory right to redeem from
the sale; is it not clear that he would have been obliged
to pay the amount for which the property was sold as
returned by the sheriff, including the very sum which
is here termed a "commission," wrongfully but mis-
takenly claimed by the sheriff, and voluntarily paid
by the purchaser?   Our conclusion is that the sum

claimed constituted a surplus in the hands of the sheriff, which it was his duty to have paid to the judgment debtor. *Wilkinson v. Baxter's Estate*, 97 Mich. 536 (56 N. W. 931); *Mitchell v. Weaver*, 118 Ind. 55 (10 Am. St. Rep. 104, 20 N. E. 525).

2. The remaining question is, will assumpsit lie against the county for the recovery of such surplus which the sheriff has wrongfully and mistakenly paid into its treasury? Counsel for the respondent insist that the county stands in the position of an independent and adverse claimant, and that it only received from the sheriff payment of a claim alleged upon its part, and that payment by the sheriff " upon its independent claim does not discharge the sheriff from such indebtedness if, as a matter of right, appellant's assignors were entitled to have it paid to them by the sheriff." It is not pretended that the respondent has any valid or legal right to the moneys in controversy. It received the moneys of plaintiff's assignors without right or consideration, and it would be inequitable for it to retain the sums so received. Under such circumstances, the law implies a promise of restitution for the benefit of the rightful owner. As was said by Judge FIELD in *Pimental v. City of San Francisco*, 21 Cal. 352:

" If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it. . . . If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor. . . . The legal liability springs from the moral duty to make restitution. And we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics; its command always is to do justice."

Nor can plaintiff's right of action be defeated upon the ground of "voluntary payment" made to respondent by the sheriff. As regards the plaintiff or his assignors, the payment is not to be considered a voluntary payment. It was made without their knowledge or consent.

But it is insisted that there is no privity between the plaintiff or his assignors and the respondent respecting the transaction. It is well settled that

" An action for money had and received lies against any one who has money in his hands which he is not entitled to hold as against the plaintiff, and want of privity between the parties is no obstacle to the action." *Bank of Metropolis v. First Nat. Bank of Jersey City*, 19 Fed. 301.

In *Bayne v. United States*, 93 U. S. 642, the supreme court of the United States say :

" Assumpsit will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund."

A well-considered case, which involved this very question, is that of *State v. Village of St. Johnsbury*, 59 Vt. 332 (10 Atl. 531, 533). In the course of the opinion in that case, this language appears :

" But it is said that assumpsit for money had and received will not lie, for that there is no privity between the state and the village, as the latter received from third persons, and has retained the money in good faith, under an adverse claim of right and ownership. But, in order to maintain this action, there need be no privity between the parties, nor any promise to pay, other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff, that he has no right conscientiously to retain. In such case the equitable principle on which the action is founded implies the

promise. When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable ground for keeping it, the law creates the privity and the promise."

The rule was announced by the court of king's bench as early as 1725, in the case of *Attorney General v. Perry*, 2 Com. 481, that

"Whenever a man receives money belonging to another without any reason, authority, or consideration, an action lies against the receiver as for money received to the other's use; and this as well where the money is received through mistake, under color, and upon an apprehension, though a mistaken apprehension of having good authority to receive it, as where it is received by imposition, fraud, or deceit in the receiver."

In addition to the authorities already cited, the proposition is fully sustained in *Haebler v. Myers*, 132 N. Y. 363 (28 Am. St. Rep. 589) (30 N. E. 963); *United States v. State Bank*, 96 U. S. 30; *Criswell v. Whitney*, 13 Ind. App. 67 (41 N. E. 78); *Board v. Robinson*, (N. M.) 34 Pac. 295; *Brand v. Williams*, 29 Minn. 238 (13 N. W. 42); *Knapp v. Hobbs*, 50 N. H. 476. Respondent's counsel concede "that the considerations relating to the liabilities of individuals in such cases apply to respondent;" and we know of no reason why the common obligation to do justice, which is binding upon individuals, is not equally applicable to a county. Indeed, in many of the cases cited, the action was upheld against municipal corporations.

A further defense, of the statute of limitations, was interposed by respondent to five of the thirty-five causes of action. As to this defense, the lower court found against the respondent, and we think its finding in this particular was correct.

For the reasons given, we think that the appellant

.is entitled to recover; and the judgment will be re-
versed, and the cause remanded for further proceed-
ings in accordance herewith.

ANDERS and DUNBAR, JJ., concur.